IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2007

Charles R. Fulbruge III
Clerk

No. 07-20237
Summary Calendar

URSULA HALL

Plaintiff-Appellant

V.

CONTINENTAL AIRLINES INC

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-158

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Ursula Hall ("Hall") appeals the district court's grant of the defendant's motion for summary judgment. We AFFIRM.

## I. FACTS AND PROCEEDINGS

Continental Airlines, Inc. ("Continental") hired Hall as an airport ticket agent in 1996. In October 2000, she began working in the Customer Care Department. As a Customer Care Representative, Hall's duties included

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

receiving customer complaints, researching the complaints, appropriately responding to customers, and documenting her responses to customers in Continental's files.

In February 2002, Hall failed to address and document a customer complaint. Three months passed, and Hall's supervisor, Joycelyn Barrow ("Barrow"), intervened and responded to the customer's complaints about Continental's service and Hall's lack of response. Barrow discussed Hall's poor job performance after that incident with her in May 2002. By October 2002, Barrow rated Hall's job performance as "On-Target Minus" and developed a performance improvement plan for her. Hall insisted upon tape-recording a mandatory job evaluation meeting with Barrow, but when the meeting was postponed, Hall refused to meet with Barrow. In December 2002, Hall objected again to meeting with Barrow and being required to participate in a performance improvement plan.

On December 16, 2002, Barrow and Judy Dyer ("Dyer"), Director of Customer Care, met with Hall to discuss Continental's expectations regarding her productivity and job performance. Continental had received another customer complaint regarding Hall's lack of timely customer service. They reminded Hall of her obligation to provide polite, timely responses to customer complaints and to document her interactions in resolving complaints. At the meeting, Hall accused Barrow of harassment.

Hall's allegation was investigated by Continental's Managing Director of Human Resources, Gigi Jensen ("Jensen"). Jensen met with Hall on December 18, 2002 to discuss the complaint. Hall complained of Barrow's numerous written communications and e-mails which she felt were micromanaging. Afterward, Hall took an extended vacation and, upon her return to work in late January 2003, Dyer changed Hall's performance rating to "On-Target."

By March 2003, Continental continued to receive customer complaints regarding Hall's job performance. Hall, now supervised by Suzanne Venn ("Venn"), was advised that her work files were under review and that the result of the review could mean discipline or discharge. On April 25, 2003, Venn and Service Manager, Renee Mobley, held an investigatory meeting with Hall to discuss the serious problems discovered by the quality assurance review. The review revealed that Hall had closed customer complaint files when the complaint had not been resolved, documented customer responses that were never sent, and reopened closed files only to close them again, so that she could get credit for successfully resolving customer complaints.

On April 29, 2003, Hall submitted a formal written complaint of "workplace" harassment. She made no allegation of harassment based upon a protected category, but expressed her "fear of retaliation" and alleged that her supervisors had "violated [her] due process rights." Jensen reviewed Hall's complaint but concluded that none of the allegations were related to Hall's race or sex.

Based on the results from the review of Hall's work files, Continental terminated her employment on May 2, 2003. Hall filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 21, 2004, after initially filing a charge with the Civil Rights Division of the Texas Workforce Commission. She alleged that she was subjected to unlawful discrimination on the basis of her sex and that she had been terminated in retaliation for complaining about that conduct. She received a right-to-sue notice from the EEOC dated September 29, 2004, but did not file a lawsuit in federal court until January 18, 2005. In her complaint, she alleged that Continental had discriminated against her on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2000h-6, and the Civil Rights Acts of 1866 and 1871, as amended, 42 U.S.C. §§

3

1981, 1983. She also claimed that she had been terminated out of retaliation. Finally, Hall alleged state law claims of assault, defamation, and "negligent hiring and retention."

The district court adopted the magistrate judge's report and recommendations, finding that Hall's lawsuit was not timely filed, that her claims of discrimination and retaliation under Title VII failed on the merits, and that her state law causes of action were abandoned due to her failure to comply with applicable statutes of limitation.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as matter of law. FED. R. CIV. P. 56(c). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005). To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

A.    Hall's Title VII Claims

Title VII disallows discrimination in hiring or termination of an individual based on his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Before an individual can pursue a Title VII claim in federal court, she must first exhaust her available administrative remedies. See Taylor v. Books A Million, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002). Exhaustion occurs when an individual files a timely complaint with the EEOC, her claim is dismissed by that agency, and the agency informs her of her right to sue in federal court. Id.

at 379. Once the EEOC has issued a right-to-sue letter, an individual has ninety days in which to file a civil action in federal court. 42 U.S.C. § 2000e-5(f)(1). Indeed, "[t]his requirement to file a lawsuit within the ninety-day limitation period is strictly construed." Taylor, 296 F.3d at 379.

The EEOC dismissed Hall's complaint and provided notice of her right to sue on September 29, 2004. She filed this lawsuit in federal court on January 18, 2005, more than 100 days after the EEOC notified her of her right to sue. Hall does not address this issue and does not provide proof of the date she received the notice. When the actual date of receipt is unknown, "courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." Id. at 380. Even if we add several days to the ninety-day limit to allow for Hall's actual receipt of the notice, her complaint was filed untimely. Therefore, we hold that the district court properly dismissed Hall's Title VII claims.[1]

B.  Hall's § 1981 Claim

Hall claims that Continental discriminated against her on the basis of her race, in violation of 42 U.S.C. § 1981.[2] Section 1981 protects the right to enforce contracts without respect to race. 42 U.S.C. § 1981. This Circuit permits the prosecution of § 1981 claims that involve alleged discrimination of at-will employees. See Byers v. Dallas Morning News, Inc., 209 F.3d 419, 425 (5th Cir. 2000).

---

[1] Even if her Title VII claims had been filed timely, her claim for race discrimination is barred because she did not raise that issue in her EEOC complaint. Courts may not consider claims brought under Title VII that were not included in a charge of discrimination with the EEOC. See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 711–12 (5th Cir. 1994).

[2] Hall also made a discrimination claim under § 1983, but this statute prohibits only discriminatory behavior suffered at the hands of state actors. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982). Because Hall has not alleged discriminatory behavior by a state actor, § 1983 is inapplicable. Thus, we find that the district court properly dismissed her § 1983 claim.

The analysis for claims under § 1981 and Title VII are identical and employ a burden-shifting framework for evaluating discrimination claims. See Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002). In cases involving termination for workplace rule violations, an individual must first establish a prima facie case for discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A prima facie case can generally be established if the plaintiff can show that he is a member of a protected class, he was qualified for the position that he held before being fired, he was fired or suffered other adverse employment action, and that similarly situated individuals outside of his protected class were treated more favorably. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512–13 (5th Cir. 2001); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995). If a prima facie case for discrimination can be established, then the burden shifts to the defendant to rebut the plaintiff's case by articulating a legitimate, nondiscriminatory reason for any alleged unequal treatment. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253–56 (1981); Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993). If the defendant presents such a reason, then the burden shifts back to the plaintiff to show that the defendant's reason for termination is not true, but is a mere pretext for discrimination, or that the reason is true, but the plaintiff's race was a motivating factor. McDonnell Douglas, 411 U.S. at 804–05; Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005).

Here, Hall fails to establish a prima facie case for race discrimination. Although the record indicates that at one time Hall was qualified for the job she held with Continental, and that she was later fired from that job, she presented no evidence that similarly situated individuals outside of her protected class were treated more favorably. Therefore, our analysis ends here and we hold that the district court properly dismissed Hall's § 1981 claim.

C.     Hall's State Law Claims

Hall claims that, under Texas law, Continental is liable to her for assault, defamation, and "negligent hiring and retention."   However, she neglected to provide any argument or support for these claims in her brief.   Because "[i]nadequately briefed issues are deemed abandoned," this Court will not consider this issue.  United States v. Charles, 469 F.3d 402, 408 (5th Cir. 2006).

IV.  CONCLUSION

The judgment of the district court is AFFIRMED.