CORRECTED October 30, 2009

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2009

No. 09-30346
Summary Calendar

Charles R. Fulbruge III
Clerk

CINDY BOUVIER

Plaintiff-Appellant

v.

NORTHROP GRUMMAN SHIP SYSTEMS, INC.

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-cv-9418

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

The district court granted summary judgment to Northrop Grumman Ship Systems, Inc. ("Northrop") on all counts of Cindy Bouvier's gender discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Bouvier claims that Northrop disciplined her more harshly than her male coworkers after an alleged safety incident and that Northrop delayed a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

departmental transfer due to her gender. Bouvier also claims Northrop retaliated after she complained of the way the company treated her. The district court granted summary judgment on her retaliation claim for failing to exhaust her administrative remedies and on her gender discrimination claims because Bouvier did not establish a genuine issue of material fact as to pretext. Bouvier appeals. We affirm the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bouvier worked as a gantry crane rigger for Northrop on an Avondale, Louisiana shipyard. After expressing an interest in training as a crane operator, Northrop placed her in operator training. After approximately a year of training, Bouvier underwent a final evaluation of her crane operating skills on December 4, 2006 (the "Initial Skill Level Checklist"). As part of the Initial Skill Level Checklist, Bouvier's supervisor, Mike Norman, and foreman, Robert Thomas, assessed Bouvier and a fellow trainee, Jonathan Sallinger, at the highest initial crane operator skill level, and submitted department transfer forms placing Bouvier and Sallinger in the crane operator department. The transfer did not involve a change in pay. Due to a delay in paperwork, Northrop approved Bouvier's transfer form on February 28, 2007, and Sallinger's on March 1, 2007. Once transferred, Northrop would issue Bouvier a crane operator license to display on her badge.

Despite the delay in paperwork, Bouvier began work as a crane operator. On February 6, 2007, Norman reprimanded Bouvier for swinging a crane over an occupied guard tower. Northrop suspended both Bouvier and Darryl Henderson, the crane rigger working with her at the time; and temporarily reassigned Bouvier to the crane rigger department.

Bouvier filed a grievance with her union, alleging that Norman harassed her and unjustly suspended her. She did not allege any discrimination due to gender in the grievance. Northrop offered to reinstate her as crane operator on

the condition that she promise to work safely, heed work instructions, and treat others with dignity and respect. She declined the offer and continued to work as a crane rigger.

Bouvier filed an EEO charge alleging sex discrimination. She alleged that there was no safety violation, that Norman screamed and talked to her in a rough manner but laughed and joked with her male coworkers, and that Northrop unfairly delayed her crane operator assignment until February 2007. Bouvier checked only the sex discrimination box, leaving the retaliation box blank.

Bouvier brought this lawsuit after receiving her right to sue letter from the EEOC. She alleged gender discrimination, retaliation, and a hostile work environment. At her deposition, Bouvier testified that no one at Northrop had made derogatory remarks relating to gender and that Norman screamed and yelled at employees regardless of gender.

Northrop moved for summary judgment on all claims. Along with her opposition to Northrop's motion for summary judgment, Bouvier filed a sworn statement that she had previously complained to Norman and others that she was treated differently than her male coworkers. Her statement also said that coworkers often remarked over the radio that "it was a man's world," and that, as part of his supervisory duties, Norman monitored the radio and did nothing to stop these comments.

The district court granted summary judgment in favor of Northrop. The court found that Bouvier had not administratively exhausted her remedies with respect to her retaliation claim. As to her gender discrimination claim, the court refused to consider Bouvier's sworn statement in opposition to the motion because it found her assertions inconsistent with her prior deposition testimony. Bouvier appeals the grant of summary judgment with respect to her retaliation

claim and her gender discrimination claim.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. McIntosh v. Partridge, 540 F.3d 315, 319 (5th Cir. 2008) (citing Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 (5th Cir. 1995)). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 257 (5th Cir. 2009). Fact issues are viewed in the light most favorable to the nonmovant. McIntosh, 540 F.3d at 319. "Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." Clark v. Am.'s Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997).

A.      Admission of Bouvier's Sworn Statement

As a preliminary matter, we must decide whether to consider Bouvier's sworn statement in opposition to the summary judgment motion. Affidavits submitted in opposition to a motion for summary judgment may supplement deposition testimony, but cannot contradict prior testimony without explanation. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996). In other words, the summary judgment affidavit may supplement deposition testimony by clarifying or amplifying the facts with greater detail but may not simply "tell[] the same story differently." Id.

The district court correctly excluded Bouvier's sworn statement. The statement contradicted her deposition testimony that no one at Northrop said anything negative or derogatory to her because she is a woman. Bouvier also testified in her deposition that Northrop retaliated against her for complaining about the delay in receiving her operator license, but she did not mention gender

4

as a reason for that retaliation. Her sworn statement contradicts this testimony by saying she complained on multiple occasions that the license would not be delayed if she were a man. Therefore, the portions of Bouvier's testimony that are inconsistent with her prior testimony were properly excluded.

B.    Administrative Exhaustion of Retaliation Claim

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008) (citing Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006)). Filing an administrative charge with the EEOC satisfies this requirement. Id. Although Bouvier filed a sex discrimination charge with the EEOC, she never referenced a possible claim for retaliation. While this court will read the EEO charge "somewhat broadly" to determine "what EEOC investigations it can reasonably be expected to trigger," Pacheco, 448 F.3d at 792, Bouvier's failure to reference retaliation in the EEO charge defeats her retaliation claim.

Bouvier's EEO charge fails to mention any prior complaints of sex discrimination or allege any facts that would put the EEOC on notice to investigate retaliation. A reasonable investigation by the EEOC would not have uncovered a potential retaliation claim. We have previously recognized that discrimination and retaliation claims are distinct, and the allegation of one in an EEO charge does not exhaust a plaintiff's remedies as to the other. See, e.g., Randel v. U.S. Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998) (finding failure to exhaust a racial discrimination claim when the EEOC charge only included reprisal). We affirm the district court's finding that Bouvier had not exhausted her retaliation claim.

C.    Prima Facie Discrimination Claim

For purposes of the summary judgment motion, the district court assumed that Bouvier had established a prima facie case of gender discrimination, but we

5

ask whether Bouvier introduced sufficient evidence to survive summary judgment on her gender discrimination claim. Bouvier put forth two theories on gender discrimination: (1) Northrop unfairly discriminated against her by delaying her the official crane operator license after the Initial Skill Level Checklist, and (2) Northrop unfairly reprimanded her after a "fabricated" safety violation.

Bouvier carries the initial burden of establishing a prima facie case of discrimination, which she can do by satisfying the four-prong test set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, Bouvier must show: (1) she is a member of protected class, (2) she was qualified to be a crane operator, (3) she suffered adverse employment action, and (4) others outside the protected class were treated more favorably. See id. at 802. The first two prongs are not in dispute. As a woman, Bouvier is a member of a protected class, and she demonstrated she was qualified for the operator position during the Initial Skill Level Checklist. The final two factors are contested on both of Bouvier's theories.

1.    Crane Operator License

Bouvier claims gender discrimination caused the delay of her official transfer to the crane operator position. Although Bouvier's male coworker Sallinger did not receive his official transfer until March 1, 2007–the day after Bouvier's official transfer–Bouvier claims that she saw Sallinger wearing the license on his badge in January 2007.[1] Even viewing this in the light most favorable to Bouvier, her delay in obtaining a license to wear on her badge was

---

[1] Bouvier made this assertion in her sworn statement in opposition to Northrop's summary judgment motion, but this particular allegation did not contradict previous testimony, and may therefore be considered. See, e.g. Taylor v. Coastal Secs., Ltd., 45 Fed. App'x 326 (5th Cir. 2002) (striking only the portions of an affadavit that were inconsistent with deposition testimony).

6

not an adverse employment action. See *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (finding that a delay in promotion was not an adverse employment action where the plaintiff received the promotion with retroactive pay and seniority). We have held that, for Title VII discrimination claims, an adverse employment action "'include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (per curiam) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).[2] Because the delay in promotion was temporary, it was not an "ultimate employment decision" and the district court correctly granted summary judgment.

## 2. Discipline for Safety Violation

Bouvier also contends that she suffered an adverse employment action when Northrop suspended her for two days and temporarily reassigned her to crane rigger with a conditional opportunity for reinstatement as crane operator after the February 6, 2007 incident. It is not readily apparent that this was an adverse employment action because crane operator and rigger are similar jobs and she had an opportunity for reinstatement as crane operator. Cf. *Alvarado v. Texas Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) ("[D]enial of a transfer may be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action . . . if the position sought was objectively better . . .

---

[2] The Supreme Court has held that Title VII's anti-retaliation provisions prohibit more conduct than its anti-discrimination provisions. See *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Expressly limiting its holding to retaliation claims, the Supreme Court abrogated the "ultimate employment test" and held that employees much show that a reasonable employee would have found the challenged action materially adverse. *Id.* at 67. However, the "ultimate employment test" still applies to cases alleging discrimination. See *McCoy*, 492 F.3d at 559–60 ("In *Burlington Northern*, the Court expressly limited its holding to Title VII *retaliation* claims . . . .") (emphasis in original).

.") (emphasis in original); Benningfield, 157 F.3d at 378 (finding temporary delay in promotion insufficient to support a discrimination claim). However, due to Bouvier's testimony and declarations of her coworkers, we conclude that Bouvier put forward sufficient evidence that the transfer to crane rigger involved a loss of prestige and responsibility. The training required to become a crane operator also demonstrates that employees coveted the operator position and considered it a promotion from crane rigger. See Alvarado, 492 F.3d at 614–15 (listing several factors for determining whether a denial of a transfer is an adverse employment action including how the respective positions are viewed among employees and the skills and training required to transfer).

We now ask whether Bouvier has put forward sufficient evidence that similarly situated males were treated more favorably under the "nearly identical" standard. Perez v. Texas Dep't of Criminal Justice, Inst'l Div., 395 F.3d 206, 213 (5th Cir. 2004) ("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"). "[N]early identical" is not synonymous with "identical," and whether similarly situated males were treated more favorably turns on whether the violations were of "'comparable seriousness.'" Lee, 574 F.3d at 260–61 (citing McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n.11 (1976)).

Viewing the evidence in the light most favorable to Bouvier, she has produced sufficient evidence to create a factual issue as to whether Northrop treated similarly situated males more favorably. Although Bouvier received the same discipline as Henderson, the male crane rigger involved in the incident, Northrop demoted only Bouvier. Bouvier also points to sufficiently similar safety violations involving male crane operators that Northrop may have treated more favorably. Although none of the other incidents in the record involved a

8

crane swinging a load over an occupied guard tower, the law does not require that the incident be "identical," but only of "comparable seriousness." Lee, 574 F.3d at 260–61.

Bouvier presents evidence that a crane operated by a male began rolling toward another crane and the operator did not respond to repeated attempts to stop the crane, which included radioing his crane, blowing a whistle, and the other crane sounding its horn. The crane stopped only after other operators threw the emergency switch. Northrop did not discipline the male operator in question after the investigation revealed that his travel gear "stuck a little." While not overwhelmingly similar, this incident, combined with other serious incidents for which male operators received little discipline, sufficiently establishes the fourth McDonnell Douglas prong for purposes of summary judgment. We find that Bouvier introduced sufficient evidence to make her prima facie case with respect to Northrop's discipline for the alleged safety violation.

D.    Legitimate Nondiscriminatory Reason

Once the plaintiff establishes her prima facie case, the defendant must articulate a legitimate nondiscriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. If the defendant does so, the burden shifts to the plaintiff to rebut the defendant's explanation either by showing that the reason given is pretext for unlawful discrimination, or the proffered reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411–12 (5th Cir. 2007). In this case, Northrop articulates a legitimate reason: the February 6, 2007 safety violation witnessed by Norman.

Bouvier argues she has put forth sufficient evidence of pretext by alleging

Norman fabricated the safety violation. However, the plaintiff has not necessarily proven pretext by showing the facts underlying the employer's reason for the adverse employment action are factually incorrect. See Little v. Republic Ref. Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification.") (citing Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1507 (5th Cir. 1988). Bouvier's testimony is consistent with an honest mistake by Norman, namely that he misperceived the crane in relation to the guard tower and cited Bouvier when the crane had not in fact passed over the guard tower.

Bouvier puts forth no evidence to discredit Northrop's assertion that Norman's perception of the incident motivated the reprimand. The evidence shows Northrop reasonably believed Norman had witnessed a safety violation and Northrop acted in good faith. See Waggoner v. City of Garland, 987 F.2d 1160, 1165 (5th Cir. 1993) ("The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith . . . ."). To find that Northrop's proffered reason was mere pretext, a jury could only speculate as to Norman's and Northrop's motives. See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267–68 ("Reviewing the entire record, we find that [plaintiff] has introduced no evidence which would support a reasonable jury finding of retaliatory motive without engaging in impermissible speculation."). We find that Bouvier failed to establish a genuine issue of material fact as to pretext.

## III. CONCLUSION

Because Bouvier failed to administratively exhaust her retaliation claim and failed to put forward sufficient evidence of gender discrimination, the

district court was correct to grant summary judgment.  We therefore AFFIRM.

AFFIRMED.