# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20218
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 24, 2014

Lyle W. Cayce
Clerk

BEVERLY ROBERTS,

Plaintiff - Appellant

v.

THE LUBRIZOL CORPORATION,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-3272

Before KING, JOLLY, and HAYNES, Circuit Judges.

PER CURIAM:*

Appellant Beverly Roberts appeals the district court's grant of summary judgment in favor of Appellee Lubrizol Corporation on her claims for unlawful sex discrimination and unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. For the following reasons, we hereby AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20218

## I.    Factual and Procedural Background

Beverly Roberts ("Roberts") was employed by the Lubrizol Corporation ("Lubrizol") as an operator from 2004 to 2012.  Lubrizol is a manufacturer of chemical additives and compounds.  Operators like Roberts are responsible for running the manufacturing process for those chemical additives and compounds.

On May 28, 2012, Roberts injured her hand while on vacation and took leave under the Family and Medical Leave Act.  When she returned to work on restricted duty, Roberts claims that the other operators in her unit—all of whom were male—became hostile towards her.  She claims the other operators ignored her, refused to answer her questions, and declined to offer her any assistance in performing her job functions.

Roberts reported this behavior to her supervisor, Don McDaniel, on July 12, 2012.  She requested to be allowed to work with different operators on a different shift instead, and McDaniel told her that she would need to talk to Glenn Stephens, the superintendent of the unit.  Stephens then told Roberts that he could not transfer her to the day shift and directed her complaints to the Human Resources Department.  Human Resources told Roberts to take additional time off until her hand was completely healed and she was able return to full, unrestricted duty.

Roberts returned to work on August 28, 2012.  Shortly thereafter, on September 3, an incident occurred that prompted Roberts to complain again to her supervisor and to Human Resources.  Roberts alleges that while she was working on a batch of chemicals, she asked another operator, Ken Walsh, for guidance.  Walsh refused to answer, saying, in what Roberts alleges was a hostile tone, that she had been there long enough that she should know what to do.  Roberts complained to McDaniel, and her complaint was relayed through Glenn Stephens to Human Resources.

2

No. 14-20218

Here, the accounts of Roberts and Lubrizol management begin to differ. Roberts claims that she complained about a hostile work environment and that she was being ignored by her fellow operators. Roberts further alleges that she told Lubrizol that this treatment was due to her sex. All of Lubrizol's witnesses claim that Roberts never mentioned her sex as the reason for her treatment by the other operators. Gaylene Webb, from Lubrizol's Human Resources Department, then purportedly began an investigation of Roberts's claims.

At this point, a series of incidents occurred that ultimately formed Lubrizol's alleged basis for Roberts's termination.

On September 6, 2012, Roberts left a valve open while performing a stripping process.[1] This error caused flammable alcohol vapor to escape into the unit. Had there been a spark—or any other source of heat or flame—the vapor could have ignited. Roberts's managers wrote this incident up as a "near miss," *i.e.*, a serious safety violation that could have caused serious personal injury or property damage.

Next, on September 15, 2012, Roberts allegedly failed to close and lock a drum being filled with material. When Roberts began to pressurize the drum, material began to bubble up and escape from the drum. Roberts was stopped by a coworker before the material caused damage, however the incident was again written up as a "near miss."

McDaniel and Webb met in late September to discuss the two "near misses" and Roberts's future with Lubrizol. Their proposed course of action was a demotion and an admonition to demonstrate immediate and sustained improvement or else face termination.

---

[1] A stripping process removes the alcohol used in the manufacturing process from the final product.

3

No. 14-20218

Before the letter was delivered to Roberts, however, another safety incident occurred.

Roberts was performing a blot check on a solution on October 3. The blot check involves running chemical materials through a filter in order to determine their composition. The filter is placed over a flask attached to a vacuum pump, which makes the solution move more rapidly through the filter. Brian Wessels, another operator, came through the door while Roberts was performing the test, and oil was expelled from the vacuum pump onto his face and torso. This incident was also written up as a "near miss."

Wessels told McDaniel and the other managers that he was sprayed with oil because Roberts had failed to empty the flask attached to the vacuum pump prior to performing the blot check. Roberts contests that explanation, alleging that Wessels was sprayed with oil from the vacuum pump's faulty filter, not from the flask, which she contends that she emptied.

As a result of these three "near miss" incidents, Lubrizol terminated Roberts's employment on October 9, 2012.

After her termination, Roberts filed a complaint with the Equal Employment Opportunity Commission. Her complaint was denied and she was issued a right to sue letter. This lawsuit followed.

At the time of summary judgment, the appellant had pending claims for sex discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Lubrizol moved for summary judgment, arguing that Roberts failed to establish a prima facie case for discrimination because she failed to show more favorable treatment of a similarly situated male operator. In response to the retaliation claim, Lubrizol argued that Roberts failed to show either that she had engaged in a protected activity or that Lubrizol's justification for her termination was pretextual.

4

No. 14-20218

In Roberts's reply to the motion for summary judgment, she asserted—for the first time—a claim for sexual harassment. She also argued that there was a genuine issue of material fact with regard to the discrimination and retaliation claims.

The district court granted Lubrizol's motion for summary judgment on both claims. Regarding sex discrimination, the court held that Roberts failed to offer evidence that similarly situated male operators were treated differently. As to retaliation, the court held that Roberts failed to produce evidence showing that Lubrizol's justification was pretextual. The district court declined to address the sexual harassment claim, holding that it was not properly before the court.

Roberts then appealed to this court.

## II.    Sex Discrimination

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

We first address Roberts's sex discrimination claim.[2] Where, as here, the plaintiff presents no direct evidence of unlawful discrimination, the claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff bears the initial burden of demonstrating a prima facie case of discrimination by showing: "(1) she is a member of a protected class; (2) she was qualified for

---

[2] Sex discrimination claims under Title VII and § 1981 are analyzed under the same framework. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Hall v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. 2007) (unpublished).

the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *see also McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show "a legitimate, nondiscriminatory reason for its actions." *Alvarado*, 492 F.3d at 611. If such a reason is shown, the burden shifts back to the plaintiff to demonstrate that either: "(1) the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic." *Id.* (internal quotation marks omitted).

Here, the district court correctly held that Roberts failed to produce evidence sufficient to create a genuine issue of material fact as to the fourth prong of her prima facie case for discrimination, that similarly situated male operators were treated more favorably. In order to show the fourth prong, the plaintiff must come forward with a suitable "comparator," *i.e.*, a similarly situated employee outside the protected class who was treated more favorably. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The more favorable actions towards the comparator must have taken place "under nearly identical circumstances," meaning that "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (citations omitted). Most critically, "the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (internal quotation marks omitted); *see also Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012).

But nearly identical does not mean identical, as such a burden would be insurmountable in all but the rarest of cases. *Lee*, 574 F.3d at 260. Nevertheless, while "[e]ach employee's track record at the company need not comprise the identical number of identical infractions, . . . these records must be comparable." *Id.* at 261. Moreover, "the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations." *Id.* (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Here, Roberts has put forward a litany of safety violations allegedly committed by male operators at Lubrizol that went unpunished.[3] She alleged that Steve Phillips overfilled storage tanks several times and another operator covered up the mistake; that Steve Phillips caused the whole computer system to shut down by listening to music on it; that Bryan Wessels put too much oil into a batch during an oil change and Tony Ramella told him not to worry about it; that Barney Benavides never wore his protective equipment and was never reprimanded for it; and that Steve Phillips was working during a shutdown when another operator opened a condenser and caused alcohol vapors to escape.

Yet none of these incidents suffice to establish a similarly situated operator—a "comparator"—as none of these incidents give rise to "nearly identical" circumstances to Roberts's termination. Most of these proffered incidents do not implicate the safety of the other operators. As for the two that do, Barney Benavides's failure to wear his protective equipment is not comparable to Roberts's three safety violations, and Steve Phillips was not the

---

[3] For several of these, Roberts did not identify the alleged offender, making it impossible to determine if the employees are similarly situated to Roberts.

operator who *actually caused* the alcohol vapors to escape—by Roberts's own admission that was another operator on Phillips's shift.

Two other operators are, however, candidates to be comparators: Tony Ramella and Ken Walsh.

Roberts alleges two violations on the part of Ramella. First, Ramella caused a storage tank to overflow. The incident was written up as a technical error rather than as an operator error (incorrectly, according to Roberts). Second, Ramella was running a side of the unit where a valve was left open with the pump running from 7:00 a.m. to 2:00 p.m. According to Roberts, this could have caused both the pump and the process to burn up. She caught the error and told Ramella about it when Don McDaniel was present. Roberts alleges that Ramella suffered no consequences.

Ramella is not, however, a suitable comparator. First, neither of Ramella's incidents exposed another operator to chemicals, as Roberts's final violation did. Second, there is no evidence in the record that Ramella was not reprimanded for the second error. The only evidence offered is Roberts's testimony and there was no foundation laid that she had personal knowledge of disciplinary action taken against Ramella. Roberts presented neither deposition testimony from Ramella nor from McDaniel (or any other supervisor) that Ramella was not disciplined. Third, there is no evidence as to how close together in time Ramella's violations occurred—an important consideration given Roberts had three violations within one month. As such, there is simply no evidentiary basis for Ramella to be considered a suitable comparator.

Walsh is the second plausible comparator. Walsh's incident is the most serious alleged by Roberts. Roberts testified that Walsh failed to close certain valves and, as a result, burned a maintenance employee with steam. Roberts states that she is unsure whether he was reprimanded, but he was not fired

for the incident. While Walsh's mistake was certainly grave, Walsh is not a suitable comparator. Roberts alleges only one safety incident on the part of Walsh, while she had three incidents in one month. Additionally, there is no evidence that Walsh was not reprimanded, only that he was not terminated. Roberts's record is therefore not "comparable" to Walsh's as required by *Lee*. *Id.* at 261.

Because Roberts failed to produce evidence that a similarly situated male employee was treated more favorably, we affirm the district court's grant of summary judgment on Roberts's sex discrimination claims.

### III.  Retaliation

Roberts also challenges the district court's grant of summary judgment on her retaliation claim.[4] In order to prove a retaliation claim, the plaintiff must make a prima facie case that: (1) she participated in a protected activity, (2) her employer took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). As with the discrimination claim, if the plaintiff presents a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for the action. *Id.* The burden then shifts back to the plaintiff to prove that the employer's justification is a mere pretext for retaliation. *Id.* The plaintiff must prove pretext by the standard of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ---, 133 S. Ct. 2517, 2533 (2013).

Assuming that Roberts has made a prima facie case for retaliation, Lubrizol has produced evidence of a legitimate, non-retaliatory justification for

---

[4] As with the sex discrimination claims, retaliation claims under Title VII and § 1981 are analyzed using the same standard. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

No. 14-20218

her termination—three safety violations within one month. *See Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 923 (5th Cir. 2009) (unpublished) (holding that a single safety violation was a legitimate, non-discriminatory justification). As such, Roberts must show that Lubrizol's justification is a pretext.

Roberts makes two arguments regarding pretext. First, she essentially argues that her evidence of more favorable treatment of male employees is proof of a retaliatory motive. Assuming that a showing of disparate treatment is sufficient to allow a jury finding of a retaliatory motive, *see Bryant v. Compass Grp. USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation."), for the reasons discussed in Part II, *supra*, Roberts has failed to establish a comparator sufficient to create a genuine issue of material fact as to disparate treatment.

Second, Roberts argues that the temporal proximity of her September 3, 2012, complaint to her October 9, 2012, termination creates a genuine issue of material fact that her safety violations were a pretext for retaliation. While temporal proximity may be sufficient to establish the causation element of a plaintiff's prima facie case for retaliation, *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013), temporal proximity is insufficient to establish pretext standing alone. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.").

As such, Roberts has failed to demonstrate that Lubrizol's non-retaliatory justification was a pretext, and the district court did not err in granting summary judgment for the Appellees.

10

## IV.     Sexual Harassment

Roberts also maintains that the district court erred in declining to consider her sexual harassment claim.  We hold that the district court did not err, because the sexual harassment claim was not properly before the district court.  The sexual harassment claim was raised for the first time in Roberts's response to Lubrizol's motion for summary judgment.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (unpublished).

While Roberts used terms such as "harassment" and "hostile work environment" in her complaint, such general language is insufficient to properly state a claim for harassment where, as here, the plaintiff expressly and clearly laid out two causes of action—one for discrimination and one for retaliation.  *See Taylor v. Tex. S. Univ.*, --- F. App'x ---, No. 13-20637, 2014 WL 2111192, at *2 (5th Cir. May 21, 2014) ("Moreover, Taylor explicitly identified her various causes of action in her amended complaint, but she did not identify a hostile work environment claim.").  No fair reading of the complaint yields a claim for sexual harassment.

As such, the claim was raised for the first time on summary judgment and was not properly before the district court.

## V.     Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.