**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 94-20937

S.W.S. ERECTORS, INC.
        d/b/a, SOUTHWEST SIGNS

                                                                        Plaintiff/Appellant,

                                            versus

INFAX, INC.,

                                                                        Defendant/Appellee.

Appeal from the United States District Court
for the Southern District of Texas

January 17, 1996

Before KING, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

S.W.S. Erectors (d/b/a Southwest Signs) appeals the district court's judgments denying its motion to remand and granting Infax, Inc.'s motion for summary judgment. Finding no error with these judgments, we affirm the district court's rulings.

**FACTS**

Infax, Inc. was the prime contractor hired by the City of Houston to construct and install signs at the Intercontinental Airport in Houston. Infax subcontracted some of its work to Triangle and Service ("Triangle"), and Triangle subsequently subcontracted Southwest Signs to perform work.

While on the job, Southwest was asked to perform work that exceeded the scope of its original contract with Triangle. Southwest performed the work although it had not received prior written consent from Triangle. Consent was not obtained contemporaneously with the request because Triangle's on-site supervisor was absent and because Triangle refused to sign and return a copy of the contract it made with Southwest.

Although Infax promised to pay Southwest for any work performed on the site which Triangle did not pay, the specifics of the promise are in dispute. Southwest's president, David Wilson, testified in his deposition that if Triangle did not come through with signing Southwest's contract that Infax would make sure that Southwest received payment and that Infax would take care of Southwest. Later, in an affidavit, he claimed that Infax unconditionally promised to pay if Triangle did not pay Southwest. Infax claims that it promised to pay Southwest directly only if Triangle did not sign the subcontract. It is undisputed that Triangle eventually did sign the contract.

After Southwest substantially performed its work, Triangle refused to pay. Southwest formally filed a claim against the surety that issued a payment bond on behalf of Triangle. When the surety denied Southwest's claim, Southwest sued Triangle in federal court. Southwest received a take nothing judgment in August 1992, which was affirmed by this court with no opinion. Southwest then sought payment from Infax. When Infax refused payment, Southwest filed suit in Texas state court on November 30, 1992. Infax was served on December 14, 1992.

Although the case evolves entirely around money allegedly owed for services, the complaint did not allege a specific amount of damages claimed by Southwest. The complaint simply alleged that Southwest had "been damaged in a sum in excess of the minimal jurisdictional limits of the court." Infax's general counsel, Robert Brazier, learned during a telephone conversation with Southwest's attorney that Southwest's damages exceeded $100,000. Brazier drafted an affidavit confirming the amount in controversy as speculated by the Southwest attorney.

Infax used the affidavit of its attorney and the diverse citizenship of the parties as the basis to attempt removal. Infax filed a notice to remove the action, under 28 U.C.S. § 1446(b), to federal district court in the Galveston Division on December 31, 1992. Infax chose the Galveston Division because it was the court in which Southwest already had commenced a case regarding the same damages against Triangle.

Southwest immediately filed a motion to remand on the ground that the case had been removed to the wrong federal district court. The state court where the Infax action had originally

2

been filed was not situated within the Galveston Division. The state court sat within the Houston Division. Infax asked the district court to transfer the case to the correct district upon realizing its error. However, before receiving a response from Infax, the district judge granted the motion to remand on the ground of removing to an improper division. The district court then issued a clarifying order indicating that it was not proper to transfer the case. The district court did not mention that the remand was based on lack of jurisdiction or comment on the amount in controversy despite the fact that Southwest had argued that the amount in controversy did not exceed the jurisdictional amount and that Infax did not have sufficient evidence of the jurisdictional amount. The March 5, 1993 order holds only that the court was remanding because the case was removed to the wrong division.

Infax deposed Southwest's president, David Wilson, and received a copy of the deposition transcript on April 28, 1993. Wilson testified that Southwest's actual damages fell between $70,000 and $80,000. Using the deposition transcript as "other paper" that made known the removableness of the case, on May 3, 1993 Infax again filed notice of removal under 28 U.C.S. § 1446(b). This time the action was removed to the Houston Division.

Southwest filed a motion to remand claiming that the order of remand was res judicata as to Infax's right to seek removal. Southwest also claimed that it was not possible to determine whether the amount in controversy exceeded $50,000 despite the deposition testimony of its president. The district court denied the motion to remand. Soon after the denial, Infax sought and obtained summary judgment against Southwest. Southwest appeals the denial of the motion to remand and the grant of summary judgment.

**DISCUSSION**

A.      *DENIAL OF THE MOTION TO REMAND.*

1.      <u>Standard Of Review.</u>

We review the denial of a motion to remand de novo. <u>Allen v. R & H Oil & Gas Co.</u>, 63 F.3d 1326, 1336 (5th Cir. 1995); <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 524 (5th Cir. 1994);

Garrett v. Commonwealth Mtg. Corp. Of America, 938 F.2d 591, 593 (5th Cir. 1991). Generally, we begin our review by applying the "facially apparent" test, which requires us to look only at the face of the complaint and ask whether the amount in controversy exceeds $50,000. Allen, 63 F.3d at 1336. If the amount in controversy is not readily apparent from the complaint, then we review summary-judgment type of evidence to determine the amount in controversy at the time of removal. Id. Our evaluation in the present case does not involve whether Infax has satisfied the elements for removal; instead the issue is whether Infax was entitled to attempt a second removal after its first removal failed. Nevertheless, we review this issue de novo.

### 2. Twice Removed On The Same Ground.

Southwest argues that Infax could not remove the case more than once on the same ground. It asserts that because both removals were based on diversity of citizenship, both removals were made on the same ground.

Infax counters that 28 U.S.C. § 1446(b) permits more than one notice of removal. A remand order is conclusive only regarding the matters actually adjudged. The district court remanded because it had been removed to the wrong division. Infax contends that because the district court did not address whether federal diversity existed, Infax is not precluded from seeking removal on this ground. Further, Infax claims that Infax could not know that the controversy exceeded $50,000 until it received Wilson's deposition transcript.

We find that Infax reacquired the right to file a second petition to remove. The Fifth Circuit recognizes a defendant's right to seek subsequent removals after remand. See Browning v. Navarro, 743 F.2d 1069, 1079-80 n.29 (5th Cir. 1984) (noting that second removal petitions are permitted). As a general rule, once a case is remanded to state court, a defendant is precluded only from seeking a second removal *on the same ground*.[1] The prohibition against removal "on the same ground" does

_____

See, e.g., St. Paul & C. Ry. Co. v. McLean, 108 U.S. 212, 2 S. Ct. 498, 500, 27 L. Ed. 703 (1883) ("a party is not entitled, under existing laws, to file a second petition for removal upon the same grounds, where upon the first removal by the same party, the federal court declined to

4

not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable. See O'Bryan v. Chandler, 496 F.2d 403, 410 (10th Cir.), cert. denied, 419 U.S. 986, 95 S. Ct. 245, 42 L. Ed. 2d 194 (1974); see also One Sylvan Road North Assocs. v. Lark Int'l, Ltd., 889 F. Supp. 60, 62, 63 (D. Conn. 1995) ("the fact that a case was initially removed and remanded does not itself preclude removal a second time around. A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition *when subsequent pleadings or events reveal a new and different ground for removal. . . .* By adding the second paragraph of § 1446(b), Congress intended that a party be permitted successive removals" [emphasis added][citations and quotations omitted]).

In O'Bryan, the defendant sought removal under 28 U.S.C. § 1442(a)(3) in both removal petitions, and the district court specifically held in the remand order that the action was not removable pursuant to 28 U.S.C. § 1442(a)(3). When explaining that the Supreme Court's use of the phrase "same grounds" did not refer to the claim for relief alleged in the plaintiff's petition, the Tenth Circuit noted that "different grounds more precisely mean a different set of facts that state a new ground for removal." Because the court allowed the second removal petition, which was based on the same statute providing federal jurisdiction (e.g., § 1442(a)(3)), the O'Bryan court impliedly indicated that section 1446(b) contemplates a valid second petition for removal that alleges new facts in support of the same theory of removal.

Similarly, in One Sylvan Rd., the defendant sought removal on diversity jurisdiction in both petitions for removal. 889 F. Supp. at 62. The district court's first order of remand concluded that "only possession of the premises was at issue and that, therefore, the amount in controversy did not exceed $50,000." The second petition for removal alleged that a ruling by the judge as well as

---

proceed and remanded the suit, because of his failure to file the required copy within the time fixed by the statute"); and In re La Providencia Dev't Corp., 406 F.2d 251, 252 (1st Cir. 1969) (the court noted that "[r]emoval in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed, . . . and the state court proceedings are to be interfered with once, at most," and held that the district court erred in reviewing and then vacating its order of remand).

testimony and evidence revealed that the plaintiff actually was seeking damages in excess of $50,000. The court acknowledged the ability to re-remove a case when pleadings or events establish a new ground for removal, but ultimately held that neither the judge's ruling nor the new evidence and testimony presented a different set of facts establishing a new ground for removal. Id. at 64, 65. We find that Southwest's arguments that the remand order had res judicata effect on Infax's subsequent petition for removal are without merit. O'Bryan and One Sylvan Rd. demonstrate that a remand order that expressly addresses the theory of federal jurisdiction does not have res judicata effect on subsequent removals based on the same theory, provided that the subsequent removal petitions allege a different factual basis for seeking removal. If the defendant raises a new factual basis, the new factual basis is not deemed adjudicated with the remand order and, therefore, is not barred by res judicata.[2]

In the case at bar, Infax's first removal petition sought removal under diversity jurisdiction using its own affidavit, which summarized a conversation with the plaintiff's attorney that the amount in controversy exceeded $100,000. The Galveston Division's remand order improperly remanded the case because it was filed in the wrong district,[3] but did not mention the propriety of diversity jurisdiction. The absence of a discussion regarding the correctness of removal based on diversity jurisdiction is irrelevant to the current analysis. The theory under which Infax attempted removal

---

Compare Employers Ins. Of Wausau v. Certain Underwriters at Lloyd's of London, 787 F. Supp. 165, 169-70 (W.D. Wis. 1992) (although the defendants presented a new theory for jurisdiction, they alleged the same factual ground asserted in the first petition for removal; after noting that a "remand order is deemed conclusive as to matters that were adjudged or could have been presented as a basis for removal," the court remanded the case because the defendants could have used 9 U.S.C. § 205 as a basis for removal in their first petition).

In its clarifying order the judge explained that it was not proper to transfer the case to the correct division. We disagree. Error in the venue of a removed action does not deprive the district court of subject matter jurisdiction requiring remand of the case. RTC v. Sonny's Old Land Corp., 937 F.2d 128, 130 (5th Cir. 1991). When a case is removed to the wrong district, the mistake does not require remand and the interest of justice requires that the action be transferred to the district court of proper venue. Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 644-45 (5th Cir.), cert. denied, 115 S. Ct. 577, 130 L. Ed. 2d 492 (1994). We believe that, under the circumstances presented, transferring the case would have been the most judicially conservative means of handling the case. However, we need not decide whether the district court's failure to transfer the case constituted reversible error.

6

would not directly impact its right to seek successive removals after remand; the right was affected by the factual basis on which Infax attempted removal. We have already established that section 1446(b) allows Infax to file successive removals based on different factual basis. We find that Infax has satisfied this statutory requirement. Infax's second removal petition sought removal under diversity jurisdiction using newly acquired facts from Wilson's deposition transcript. The deposition constitutes a new paper or event that changed the facts regarding the removableness of the case. Therefore, we hold that Infax's second petition for removal alleged a different factual ground for removal and was proper under section 1446(b). We further hold that the district court properly denied Southwest's motion to remand.

**3.      Timeliness Of Removal.**

Southwest argues that the 30-day removal period accrued from the creation of Infax attorney's affidavit that specified that the amount in controversy exceeded $100,000. Southwest contends that the affidavit constitutes "other paper" from which Infax became aware of the removability of the case. Southwest deduces that because Infax removed the action more than 30 days from the creation of the affidavit, the removal was untimely.

On the other hand, Infax argues that the affidavit of its attorney cannot constitute "other paper" for purposes of provoking removableness. Infax contends that paper resulting from some voluntary act of the plaintiff is necessary to convert a non-removable action into a removable one. Infax maintains that subjective knowledge of the defendant, as in its attorney's affidavit, cannot start accrual of the 30-day removal period. We agree with Infax.

Under 28 U.S.C. § 1446(b), when an action is not initially removable, the defendant has 30 days after it receives a copy of "other paper from which it may first be ascertained" that the case is or has become removable. The Fifth Circuit has indicated that the "other paper" conversion requires a *voluntary act by the plaintiff*. See Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 254 (5th Cir. 1961) (in explaining that "other paper" requires a voluntary act of the plaintiff, the court specifically noted that an initially non-removable case "cannot be converted into a removable one by

7

evidence of the defendant or by an order of the court"). Further, this Court has held that the defendant's subjective knowledge cannot convert a case into a removable action. Chapman, 969 F.2d at 163.

We find that an affidavit created by the defendant and based on the defendant's subjective knowledge cannot convert a non-removable action into a removable one. We hold that the affidavit, created entirely by the defendant, is not "other paper" under section 1446(b) and cannot start the accrual of the 30-day period for removing. On the other hand, a transcript of the deposition testimony is "other paper." Therefore, we conclude that Infax's second removal petition, which was based on the deposition transcript, was timely.

**B.** *SUMMARY JUDGMENT.*

We review the granting of a motion for summary judgment de novo. Lee v. Wal-Mart Stores, Inc., 34 F.3d 285, 288 (5th Cir. 1994). Summary judgment shall be granted if the record, taken as a whole, "together with the affidavits, if any, show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. When evaluating the summary judgment evidence, we resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Review of the summary judgment requires the same analysis employed by the district court. Willis v. Roche Biomedical Lab., Inc., 61 F.3d 313, 315 (5th Cir. 1995).

Southwest contends that genuine issues regarding material facts precluded summary judgment. Southwest's initial claims focused on two misrepresentations allegedly made by Infax: (1) a performance and payment bond was in place to pay Southwest if Triangle did not, and (2) Infax would pay Southwest if Triangle did not. Southwest appeals only the summary judgment regarding Infax's alleged representation as to its willingness to pay Southwest in the event that Triangle did not pay Southwest.

8

Southwest claims that the affidavit of its president, David Wilson, created an issue regarding the presence of evidence that Infax made a misrepresentation regarding its willingness to pay Southwest if Triangle did not. Further, Southwest contends that the letter from its attorney, Gerson Bloom, which stated that Southwest did not have a claim against Infax, also created an issue regarding Bloom's authority to author the letter.

By contrast, Infax maintains that Southwest does not have any evidence of fraud. Infax contends that Southwest is using the affidavit of Wilson, which was executed eighteen months after he gave his sworn deposition testimony, to contradict the deposition testimony and to create a dispute. Further, while Infax apparently concedes that Bloom's authority creates an "issue," it presses that this issue is not material to the case. Infax argues that the Bloom letter was irrelevant to the district court's order granting summary judgment.

At the outset we note that the fact that Southwest raises an issue of fraud does not automatically preclude summary judgment. The Fifth Circuit consistently has affirmed summary judgment in cases where a plaintiff fails to present any evidence of fraud or where no genuine issue of material fact remains regarding the fraud claim. See, e.g., Kansa Reinsurance v. Congressional Mtg. Corp., 20 F.3d 1362, 1375, 1376 (5th Cir. 1994) (after agreeing with the district court that the plaintiff introduced no evidence of the defendant's knowledge or intent to deceive, the court affirmed summary judgment on the plaintiff's fraud claims); Pruitt v. Levi Strauss & Co., 932 F.2d 458, 462 (5th Cir. 1991) (because the plaintiff admitted that he did not believe the defendant intentionally misled him, because the defendant introduced uncontroverted evidence that it did not deliberately try to mislead the plaintiff, and because the plaintiff failed to produce specific evidence of the defendant's intent to deceive him, the appellate court concluded that "[t]he district court reasonably conclude that Pruitt failed to raise a fact issue sufficient to avoid summary judgment" and then affirmed summary judgment for the defendant on the plaintiff's fraudulent inducement claim); Mills v. Damson Oil Corp., 931 F.2d 346, 348-49 (5th Cir. 1991) (the plaintiff's affidavits failed to raise a genuine, material factual issue regarding the plaintiff's fraud claim; therefore, the court affirmed summary

9

judgment for the defendant). It is well established in this circuit that an allegation of fraud does not create an impenetrable shield through which the sword of summary judgment cannot pierce. A fraud case can be wounded and killed like any other case; it receives no special privileges or protections in the battle for summary dismissal.

Our review of the record has not uncovered any evidence to support Southwest's fraud claim against Infax. We agree, therefore, that no genuine issues of *material* fact remain in the present case. First, Southwest is using an affidavit to counter the sworn testimony of Wilson. It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches without explanation sworn testimony.[4] Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137 n.23 (5th Cir.), cert. denied, 113 S. Ct. 136, 121 L. Ed. 2d 89 (1992); and Albertson v. T. J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984). Southwest claims that the affidavit and deposition are consistent. However, we conclude that Wilson's affidavit does far more than simply supplement the previous sworn deposition. Compare Kennett-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir. 1980).

The affidavit in Kennett-Murray was used only to "explain certain aspects of his deposition testimony," id. at 894, not to contradict the sworn testimony. When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment. Clark v. Resistoflex Co., 854 F.2d 762, 766 (5th Cir. 1988).

If Wilson's affidavit merely supplemented the deposition, it would have simply clarified or amplified the facts by giving greater detail or additional facts not previously provided in the deposition. Here, however, Wilson tells the same story differently. In the deposition version, Infax

On a similar note, when only inadmissible evidence is available to the plaintiff to support his fraud claim, summary judgment would be proper. See Brinderson-Newberg v. Pacific Erectors, 971 F.2d 272, 281 (9th Cir. 1992), cert. denied, 113 S. Ct. 1267, 122 L. Ed. 2d 663 (1993) (where the plaintiff presented only parol evidence of fraud in an attempt contradicted the express terms of the written agreement, which was inadmissible under California law, the court reversed the jury verdict and remanded for entry of judgment in favor of the defendant).

gives Wilson a conditional promise to pay if Triangle does not sign its contract. In the affidavit version, given eighteen months later, Infax provides a freestanding promise that guarantees payment from Infax if Triangle does not pay Southwest. Wilson gave the following deposition testimony:

> Q:  What was Mr. Nesbitt's response?
>
> A:  Mr. Nesbitt told me, he said that *if they don't come through with signing the contract, that Infax would see to it that Southwest Signs would get paid*, and they would take care of me.
> . . .
> And I feel like to this day that he will get on the stand and will testify that he had this conversation and that he indeed did obligate Infax to pay if Triangle didn't.

(Emphasis added.) His affidavit on the same subject reads as follows:

> In April, 1990, I told Mr. Nesbitt, Defendant Infax's on-site representative, that Southwest Signs could not continue to perform the work under the original contract (unsigned by Triangle Sign), or the requested change orders, without prior written authorization from Triangle Sign. Mr. Nesbitt told me not to worry about being paid, because a performance and payment bond had been posted, which would guarantee payment to Southwest Signs for all work performed. *He totally assured me that Infax would see to it that Triangle Sign paid Southwest Signs, and that Infax would pay Southwest for all the original contract work, and change orders for which Southwest Signs was not paid by Triangle Sign*.

(Emphasis added.) Southwest does not contend that Wilson misspoke in the deposition (probably because there is no explanation why Wilson waited eighteen months before attempting to correct his sworn testimony). Instead, Southwest expects us to believe the incredible explanation that the two versions are virtually the same. It is clearly apparent that the deposition and affidavit are substantially different and that the affidavit does not serve as a supplement to the deposition testimony. We therefore hold that <u>Albertson</u> precludes Southwest from creating an issue regarding Wilson's testimony by using an affidavit which contradicts Wilson's sworn testimony.

Second, the issue regarding Bloom's authority to draft the letter does not affect a material fact. Southwest's fraud claim against Infax was not based on Bloom's signing the letter. Further, Infax's motion for summary judgment was not based in any way on the letter. Additionally, the district court's order mentions the letter only in passing. The district court's comment regarding the

11

letter is not necessary to the summary judgment. We find that the issue surrounding the Bloom letter does not present any genuine issue.

Southwest has not persuasively alleged any issues of material fact which would preclude summary judgment in the present case. It is clear to everyone but Southwest that "the emperor is not wearing any clothes." There are no material issues remaining to adjudicate in this case. We therefore hold that the district court did not err in granting summary judgment for Infax.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court denying Southwest Sign's motion to remand and AFFIRM the district court granting of Infax, Inc.'s motion for summary judgment.