# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 5, 2022

Lyle W. Cayce
Clerk

No. 20-11080

Maria Seigler,

*Plaintiff—Appellant*,

*versus*

Wal-Mart Stores Texas, L.L.C., doing business as
Walmart Supercenter #963,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-998

Before Dennis, Higginson, and Costa, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

In this slip-and-fall case governed by Texas premises-liability law, plaintiff Maria Seigler appeals the district court's decisions to (1) exclude her affidavit from consideration under the sham-affidavit doctrine, and (2) grant summary judgment to defendant Wal-Mart Stores Texas, L.L.C. For the following reasons, we reverse the district court and remand for further proceedings.

No. 20-11080

## I.

While shopping at a Wal-Mart Supercenter retail store in Weatherford, Texas, Seigler slipped and fell in the store's deli section. Her amended complaint referred to the cause of her fall as "grease or a similar slick substance." She alleged that Wal-Mart had either actual or constructive knowledge of the spilled grease, yet failed to clean it up or warn her of the hazardous condition, and claimed she suffered unspecified personal injuries as a result. Seigler initially filed her lawsuit in Texas state court. Wal-Mart removed the case to federal court on the basis of diversity jurisdiction.

During discovery, Seigler and multiple Wal-Mart employees were deposed. At her deposition, Seigler was asked to describe the cause of her fall. She answered, "some sort of greasy liquid." When asked about its color, she answered "yellowish." When asked again about the cause of her fall, Seigler described the spill as a "liquid" that "smelled like chicken or like something baked or cooked" and said the substance was "greasy." She also testified that the substance "was on my tennis shoe." When asked if any other part of her body or clothes was "touched by" the substance, Seigler answered, "I don't know." Seigler also answered "no" when asked if she had "personal knowledge" or "evidence" of either how the grease got on the floor or how long it was on the floor.

A Wal-Mart employee similarly testified that the cause of Seigler's fall was "a brown substance that appeared to be chicken grease" or "an oily substance." Wal-Mart employees also testified that rotisserie chickens are displayed in plastic containers placed on a heated shelf in the deli counter, also referred to as a "hot case," and that Seigler fell in front of the counter. At least one Wal-Mart employee testified that she was working the deli counter at the time of Seigler's fall.

No. 20-11080

Relying largely on Seigler's deposition testimony, Wal-Mart moved for summary judgment. Wal-Mart argued that Seigler's testimony showed that she had no evidence that it had actual or constructive knowledge of the spill, a required element of a premises-liability claim.

With her response to Wal-Mart's motion for summary judgment, Seigler submitted an affidavit. The affidavit included the following:

> On January 25, 2018, I fell in front of the deli counter at the Walmart Supercenter in Weatherford, Texas. I was in front of the hot case where the hot rotisserie chickens were displayed, when I suddenly fell.

> After falling, I noticed that some of the greasy residue that caused me to slip was on my shoe and also on the ground next to me. The substance appeared to be chicken grease or chicken residue. When I touched it, the residue was cold, and congealed, appearing like it had been there long enough to cool off and thicken up. The residue was not clear, but appeared yellowish brown.

In its reply, Wal-Mart objected that Seigler's affidavit "lack[ed] credibility" and was a "self-serving sham" that should be stricken from the record.

Three days later, without any response by Seigler to the evidentiary objection, the district court granted Wal-Mart's motion for summary judgment, and dismissed Seigler's claim with prejudice. The district court ruled that Seigler had not carried her burden of showing a genuine dispute of material fact regarding whether the spill had been on the floor long enough for Wal-Mart to have constructive knowledge of the hazardous condition. While Seigler's affidavit did provide potential evidence on this element, the district court ruled that "it contradicts plaintiff's sworn testimony and should be disregarded." Alternatively, the district court stated that, even if it were to consider Seigler affidavit as competent evidence, summary judgment for Wal-Mart would still be granted because "plaintiff's

3

No. 20-11080

speculative testimony about the length of time the substance was on the floor based on its looks does not create a fact issue." Seigler appealed.

## II.

We "review a district court's exclusion or admission of evidence"—including application of the sham-affidavit doctrine—"for an abuse of discretion," subject to harmless-error review. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996). "[E]ven if a district court has abused its discretion, this court will not reverse unless the error affected the substantial rights of the parties." *Winzer v. Kaufman Cty.*, 916 F.3d 464, 473 (5th Cir. 2019) (cleaned up).

"This court reviews de novo a district court's grant of summary judgment, applying the same standard as the district court." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (citing *Ford Motor Co. v. Tex. Dep't of Trans.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin*, 864 F.3d at 328 (internal quotation marks and citation omitted). On summary judgment, all facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).

## III.

Seigler challenges both (1) the district court's evidentiary ruling to exclude her affidavit under the sham-affidavit doctrine, and (2) the district court's granting of summary judgment to Wal-Mart.

## A.

"In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). However, the "sham-affidavit doctrine" is an exception to this general rule by which "this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). "This authority stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

However, not every discrepancy in an affidavit justifies disregarding it when evaluating summary judgment evidence. *See Winzer*, 916 F.3d at 472. Instead, the bar for applying the doctrine is a high one, typically requiring affidavit testimony that is "inherently inconsistent" with prior testimony. *See id.*; *see also Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 767 (5th Cir. 1988) (characterizing the sham-affidavit doctrine as "denying credence to an affidavit so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham"). An affidavit that "supplements rather than contradicts prior deposition testimony" falls outside the doctrine's ambit. *S.W.S. Erectors, Inc.*, 72 F.3d at 496. In other words, the sham-affidavit doctrine is not applicable when discrepancies between an affidavit and other testimony can be reconciled such that the

statements are not inherently inconsistent.  *Winzer*, 916 F.3d at 472–73.  Typically, then, "'[i]n light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made' earlier."  *Id.* at 472 (quoting *Kennett-Murray*, 622 F.3d at 893).

The district court identified four discrepancies between Seigler's deposition testimony and affidavit pertaining to (1) the substance's color, (2) its temperature and consistency, (3) its size, and (4) whether she touched the substance.  Seigler argues that none of her affidavit testimony is inherently inconsistent with her deposition testimony, but rather that it is supplementary.  Wal-Mart argues that the affidavit testimony either contradicts the deposition testimony or offers new testimony, without explanation, on a topic that was explored during Seigler's deposition but that she claimed to have no knowledge of at that time.  Wal-Mart is correct that Seigler's affidavit does not include an explanation for the additional testimony.  However, an explanation is not required unless the affidavit contradicts, rather than supplements, the deposition testimony.  *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d at 495.

We easily conclude that two of the discrepancies identified by the district court—testimony regarding the substance's color and size of the spill—present no contradiction or inconsistency that would justify application of the sham-affidavit doctrine.  Seigler's deposition testimony that the spill was "yellowish" is easily reconcilable with her affidavit testimony that it was "yellowish brown."  And while the district court correctly noted that Seigler testified at her deposition that she did not know the size of the spill, her affidavit did not contradict her deposition because the affidavit included no testimony on the size of the spill either.

No. 20-11080

The next discrepancy, regarding the temperature and consistency of the substance, requires more attention. Wal-Mart argues that Seigler's affidavit testimony that the substance was "cold," "congealed," and "thicken[ed] up" contradicted her deposition testimony because Seigler testified at her deposition that (1) she had no "personal knowledge" or "evidence" of how long the grease had been on the floor and (2) that the substance was "liquid." However, we disagree that there was a contradiction. First, we agree with Seigler that a non-lawyer deponent is not expected to understand the legal significance of the terms "personal knowledge" and "evidence." Second, while the discrepancies between Seigler's deposition and affidavit may call her credibility into question, we do not think they rise to the level of a contradiction or an inherent inconsistency, because the testimony can be reconciled. *See Winzer*, 916 F.3d at 472–73.

Seigler described the substance as "some sort of greasy liquid" at her deposition, but she was not asked questions about its temperature or consistency. Later, in her affidavit, she described the grease as "cold," "congealed," and "thicken[ed] up." These descriptions are not mutually exclusive, nor are they necessarily contradictory. In other words, it is possible that "some sort of greasy liquid" could also be "cold," "congealed" and "thicken[ed] up." Thus, we think the proper course in this case is to allow a jury to evaluate the testimony's credibility. "'In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made' earlier." *Id.* at 472 (quoting *Kennett-Murray*, 622 F.3d at 893).

Last, after testifying at her deposition that some of the grease got on her shoe, Seigler was specifically asked, "[d]id any other part of your body or clothes get—get touched by the—by the condition or did you get it on you?" She answered "I don't know" to that specific question, which was phrased in the passive voice. While her failure to volunteer at her deposition the

additional testimony that she actively touched the grease may call her credibility into question, again, her affidavit does not inherently contradict her deposition as the testimony can be reconciled.

In sum, Seigler's affidavit testimony did not inherently contradict her deposition testimony, and the district court abused its discretion in applying the sham-affidavit rule.

**B.**

Having established that Seigler's affidavit testimony is competent summary judgment evidence, we next consider whether the district court erred in granting summary judgment for Wal-Mart.

Under Texas law, a premises owner "has a duty to exercise reasonable care to make the premises safe for invitees. *" Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 202 (Tex. 2015). To prevail on a premises-liability claim, a plaintiff must prove four elements: "(1) Actual or constructive knowledge of some condition on the premises by the owner/operator; (2) That the condition posed an unreasonable risk of harm; (3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *see also Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). This appeal involves only the "constructive knowledge" element; i.e., whether "the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Wal Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

To prove constructive notice, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition." *Id.*

at 816.    In determining whether a premises owner had constructive knowledge, a court may consider the combination of (1) the length of the time the hazard existed, (2) the proximity of employees to the hazard, and (3) the conspicuousness of the hazard. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006) (referring to "analyzing the combination of proximity, conspicuity, and longevity" when determining constructive notice).    "[M]ere proximity of an employee to a spill, without evidence of when or how it came to be on the floor, [is] legally insufficient to charge a premises owner with constructive notice of the hazard."    *Id.* at 567 (citing *Reece*, 81 S.W.3d at 816–87).    Evidence of the changed condition of a substance, however, may be sufficient on its own to show that the substance existed for long enough to result in constructive knowledge by the premises owner. *See Kofahl v. Randall's Food & Drugs, Inc.*, 151 S.W.3d 679, 681 (Tex. App. 2004); *Kroger Stores, Inc. v. Hernandez*, 549 S.W.2d 16, at 16–17 (Tex. Civ. App. 1977); *Furr's, Inc. v. Bolton*, 333 S.W.2d 688, 689–690 (Tex. Civ. App. 1960).

In *Hernandez*, for example, the plaintiff slipped in vomit and fell.    549 S.W.2d at 16.    The "only evidence . . . of how long the substance had been on the floor" was the plaintiff's testimony that the vomit appeared "already dried where it looks like cake.    It wasn't just where you could rub your hands on it and it would splash all over you.    It was just drying."    *Id.*    Based on this testimony, the appellate court affirmed a judgment entered on a jury verdict for plaintiff.    *Id.*    The court stated that "[n]o expert testimony was produced to estimate how long a period would be required for the substance to reach this condition, but we conclude that the jury was properly allowed to make its own estimate, based on its general experience and plaintiff's description of what he saw."    *Id.* at 17.    "Our question is whether reasonable minds could draw the inference that regurgitated food which was 'already dried where it looks like cake' had been on the floor for a sufficient length of time that it

should have been discovered and removed. We conclude that reasonable minds could draw this inference." *Id.*; *see also Kofahl*, 151 S.W.3d at 681 (testimony that edges of puddle of liquid were "very tacky and gummy" as if the puddle was "starting to dry up" was evidence of show constructive knowledge), *Bolton*, 333 S.W.2d at 690 (testimony that grape juice appeared dried around the edges permitted inference that spill had been on the floor long enough to result in constructive notice).

Here, the summary judgment evidence, viewed in the light most favorable to Seigler, shows that the "cold," "congealed" and "thicken[ed] up" chicken grease was on the floor right next to the "hot case" where hot rotisserie chickens are displayed. On these facts, it is reasonable to infer that the chicken grease was hot at the time that it spilled on the floor, given its proximity to the "hot case," and that the grease had been on the floor long enough for Wal-Mart to have had an opportunity to discover it, given that it had cooled and congealed by the time of Seigler's fall. Further, a jury could use its general experience to make its own estimate of how long it takes hot chicken grease to cool and congeal without the need for expert testimony. *See Hernandez*, 549 S.W.2d at 17. Because the evidence shows a genuine dispute of material fact regarding whether Wal-Mart had constructive notice of the spilled chicken grease, the district court erred in granting summary judgment.

Wal-Mart argues that Seigler is not entitled to an inference that the chicken grease was hot when it spilled because there is no evidence that the chicken grease fell from the hot case, and maintains that it is equally plausible that the grease fell from a customer's shopping cart in front of the hot case only after the chicken had been removed from the counter and carried around for long enough to have cooled down. We disagree. That there may be other conceivable possibilities does not change that it is reasonable, given the

location of the spill directly in front of the hot case, to infer that the grease was hot when it fell on the floor.

## IV.

For the foregoing reasons, the district court's grant of summary judgment to Wal-Mart is REVERSED and the case is REMANDED for further proceedings.