# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 17, 2023

Lyle W. Cayce
Clerk

No. 21-20542

Majestic Oil, Inc.,

*Plaintiff—Appellant*,

*versus*

Certain Underwriters at Lloyd's, London Subscribing to Policy Number W1B527170201,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-cv-3149

Before Clement, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

This is a first-party insurance case. Majestic Oil, Inc. asserts that its insurer, Certain Underwriters at Lloyd's, London, improperly denied coverage for damage to the roof of Majestic's property in Pasadena, Texas, in the wake of Hurricane Harvey. Majestic contends that the district court erred by excluding an expert report, excluding an expert affidavit, and then

---

* This opinion is not designated for publication. See 5th Cir. R. 47.5.

granting summary judgment in favor of Lloyd's. Because the district court did not properly conduct the required analyses in excluding the expert evidence, we vacate the district court's evidentiary rulings and remand for reconsideration under the applicable standard. In the light of that holding, we also vacate the district court's order granting summary judgment.

## I.

Majestic purchased a building in Pasadena, Texas ("the Property") in 2014. Incident to the purchase, Majestic hired a contractor, Kim Hamel, to identify and repair any issues with the Property. Hamel identified multiple leaks in the roof as well as other damage caused by normal wear and tear. During her deposition in this action, she admitted that the wear and tear damage "probably should have [been] fixed," but Majestic did not completely replace the roof. Instead, Hamel only had the leaks repaired. Hamel, along with multiple Majestic employees, attested that the roof leaked before the repairs—but not after.

Lloyd's insured the Property in April 2016. Before issuing the policy, the underwriter Lloyd's sent to inspect the Property agreed that there were no roof leaks. The policy did not cover pre-existing damage, ongoing damage, or wear and tear. Relevant here, it provided coverage for damage caused by "[r]ain or wind driven rain which enters the insured building or structure through an opening created by the force of a [n]amed [s]torm . . . ."

Enter Hurricane Harvey, such a named storm, which pummeled the Texas Gulf Coast in August 2017. It is undisputed that the Property's roof leaked after Harvey, but the parties dispute what caused those leaks. In November 2017, Majestic reported the loss to Lloyd's. An adjuster employed by Lloyd's determined that the roof was in poor condition before Harvey and the damage to the Property's interior predated the hurricane.

The structural engineering expert that Lloyd's retained agreed. Lloyd's denied the claim in August 2018.

In February 2019, Majestic hired an engineer, Gregory Becker, to determine what caused the damage. The manager of the Property told Becker that the leaks began after Harvey. In April 2019, Becker authored an initial expert report (his "First Report"). In it, he "note[d] that the storm events of Hurricane Harvey best correlate with the manager's accounting of damages[;] however[,] the earlier [storm] event [o]n January 2, 2017[,] cannot be ruled out as initially contributing to the roof vulnerability." Becker ultimately concluded in his First Report that "it is more likely than not that the observed damage is a result of the claimed storm event [i.e., Harvey]."

In August 2019, Majestic sued Lloyd's over the denial of coverage.

During Becker's deposition in April 2021, Lloyd's exposed shortcomings in the First Report. Becker conceded that he did not differentiate damage caused by covered perils from that caused by uncovered perils in his First Report. Further, he confirmed that he did not wholly rule out the January 2017 storm as initially contributing to the roof vulnerability in his First Report. But Becker also identified weather report data ("the Weather Report") he located in researching an unrelated case that he had not considered in preparing his First Report. Becker testified that he relied on the Weather Report to exclude the January 2017 storm as causing damage to the Property. He explained that he was able to rule out the January 2017 storm because the data in the Weather Report indicated that the Property experienced higher windspeeds during Harvey than Becker had previously realized. In other words, Becker refined his theory to conclude that only Harvey could have caused the observed damage to the Property. Counsel for Lloyd's questioned Becker about the Weather Report during his deposition.

Majestic provided a second expert report authored by Becker (the "Second Report") in April 2021—shortly after Becker's deposition, but six months after the deadline for expert reports. In the Second Report, Becker reiterated the conclusion, consistent with his deposition testimony, that the January 2017 storm could not have caused the observed damage to the Property. Lloyd's moved to strike the Second Report, arguing that it was untimely because it contained a new opinion. Majestic countered that the Weather Report was merely supplemental, and therefore timely. The district court agreed with Lloyd's and struck the Second Report.

In August 2021, Lloyd's filed a motion for summary judgment. Majestic opposed the motion with, *inter alia*, an affidavit from Becker. That affidavit repeated the same conclusions as Becker's now-struck Second Report, and the district court likewise struck the affidavit, as a "sham affidavit." With both Becker's Second Report and affidavit excluded, the outcome of the insurer's motion for summary judgment hinged in large part on Becker's conclusion, in his First Report, that the January 2017 storm could not be ruled out as having caused damage to the Property. Applying its reading of Texas's concurrent causation doctrine, the district court faulted Becker for failing to exclude the January 2017 storm as a potential cause of the damage and found that Majestic otherwise failed to show that the damage was attributable to Harvey. *Majestic Oil, Inc. v. Underwriters at Lloyd's, London*, No. 4:19-cv-3149, 2021 WL 4502841, at *2 (S.D. Tex. Sept. 30, 2021). Further, the court found that Majestic had not submitted evidence that could allow a jury to segregate damage caused by Harvey from damage caused by non-covered perils. *Id.* The court accordingly entered summary judgment for Lloyd's.

Majestic now appeals, contending that the district court erred by excluding the Second Report and Becker's affidavit and, in turn, granting summary judgment in favor of Lloyd's.

No. 21-20542

## II.

We review the district court's evidentiary rulings for abuse of discretion. *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 748 (5th Cir. 2018); *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). We review the district court's order granting summary judgment de novo. *GWTP Invs., L.P. v. SES Americom, Inc.*, 497 F.3d 478, 481 (5th Cir. 2007). As we agree with Majestic that the district court erred in its evidentiary rulings, we vacate the court's orders striking Becker's Second Report and affidavit, vacate its summary judgment order based on those rulings, and remand for further proceedings.

## A.

Under Federal Rule of Civil Procedure 26(e)(2),[1] a party must supplement its expert's report if the party or expert learns that it is incorrect or incomplete. *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016). "However, supplemental disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id.* (quotation marks omitted). Thus, when a party files an additional expert report after the expert disclosure deadline, the question is whether the report is "supplemental." *Id.* If it is, then it falls within Rule 26(e) and is admissible. If not, i.e., the report asserts new analysis or conclusions, it runs afoul of Rule 26(e), and Federal Rule of Civil Procedure 37(c)(1) governs its admissibility.

---

[1] Rule 26(e)(2) provides:

For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

No. 21-20542

The district court determined that Becker's Second Report was not merely supplemental because it "changed Becker's ultimate conclusions about whether certain storms before Hurricane Harvey could have caused the damage to the [P]roperty." While Becker posited in his First Report that "the earlier [storm] event [o]n January 2, 2017[,] cannot be ruled out as initially contributing to the roof vulnerability," his Second Report "ruled out" the January storm. The Second Report thus altered a significant, if intermediate, conclusion of the First Report. On the record before us, then, we discern no abuse of discretion in the court's determination that Becker's Second Report was new rather than supplemental.

The problem arises in the district court's follow-on decision to exclude Becker's Second Report. In a nutshell, the court failed properly to apply the Federal Rules of Civil Procedure. Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless . . . .

FED. R. CIV. P. 37(c)(1); *see also* FED. R. CIV. P. 16(b), (f) (authorizing district courts to control pretrial discovery through scheduling orders and providing for sanctions for failure to obey scheduling or other pretrial orders).[2] Courts consider four factors to determine whether exclusion is appropriate: "(1) the explanation for the failure to identify the [information]; (2) the importance of the [information]; (3) potential prejudice in allowing

---

[2] It is unclear under which rule the district court acted in this case because, while the district court did not enter a scheduling order, the parties agreed to a series of deadlines, including for expert disclosures. No matter; the same factors apply regardless. *See Complaint of Bean*, 841 F.3d at 372–74 (analyzing factors through lens of Rule 37); *Geiserman v. MacDonald*, 893 F.2d 787, 790–91 (5th Cir. 1990) (applying them in context of Rule 16 scheduling order deadlines).

the [information]; and (4) the availability of a continuance to cure such prejudice." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020) (quotation omitted). A district court must explain its reasoning when excluding expert evidence. *Id.*

"We are tasked with determining whether the district court 'based its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (alterations adopted) (quoting *CenterPoint Energy Hous. Elec. LLC v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 550 (5th Cir. 2006)); *see Complaint of Bean*, 841 F.3d at 372–74 (analyzing four factors to determine whether district court abused its discretion by excluding testimony as a sanction). It follows that "where a district court fails to explain its decision . . . we do not know whether the decision was within the bounds of its discretion or was based on an erroneous legal theory." *Axon Pressure*, 951 F.3d at 270 (quotation omitted).

Here, the district court provided three reasons for its exclusion of the Second Report. First, it found that the Second Report changed Becker's ultimate conclusion about the cause of the roof damage. Second, it found that the Weather Report on which Becker based the Second Report was available to Becker when he wrote the First Report. Third, the district court found that Becker's "delay to seemingly surprise [Lloyd's] at his deposition by altering his ultimate conclusions [was] not harmless."

The district court relied primarily on the fact that Becker could have obtained the data found in the Weather Report before his First Report was filed. That is a valid consideration under the first factor of our four-factor test, and it may well be determinative after full analysis. But the district court failed meaningfully to weigh the remaining factors. The court's order lacks any analysis of either the importance to the case of the new data in Becker's Second Report or the potential prejudice to Lloyd's of allowing the late

No. 21-20542

disclosures, beyond the court's bald statement that the "delay to seemingly surprise [Lloyd's] . . . [was] not harmless." And the district court did not address the possibility of a continuance to cure any prejudice. Because the district court failed adequately to explain its reasoning, "the order must be vacated and remanded to allow the district court to explain its decision after considering the proper factors." *Axon Pressure*, 951 F.3d at 270.

## B.

The district court similarly erred in striking Becker's summary judgment affidavit as a "sham affidavit" because it contradicted his First Report. Under the sham affidavit doctrine, a party cannot manufacture an issue of material fact on summary judgment using an affidavit that contradicts a prior deposition. *E.g.*, *Seigler*, 30 F.4th at 477. But Becker's affidavit was *consistent* with his deposition testimony. Indeed, the affidavit was cumulative: In his deposition, the Second Report, and his affidavit, Becker ruled out a non-covered cause of loss (the January 2017 storm first mentioned in his First Report) as a possible cause of the roof damage to the Property. Therefore, the sham affidavit doctrine does not apply in this instance. *See id.* ("An affidavit that supplements rather than contradicts prior deposition testimony falls outside the doctrine's ambit." (internal quotation marks omitted)).

Instead, as a practical matter, the fate of Becker's affidavit rises and falls with that of the Second Report, as the two repeat the same conclusions. *See Axon Pressure*, 951 F.3d at 270–71 (applying the same four-factor test to both additional expert reports and expert affidavits produced in opposition to summary judgment). Thus, while it was error for the district court to strike Becker's affidavit as a sham affidavit, on remand, the district court may properly weigh the admissibility of Becker's affidavit using the same factors that apply to the Second Report. *Id.*

No. 21-20542

## C.

Because we vacate the district court's evidentiary rulings striking Majestic's belated expert disclosures and remand for further consideration of that evidence's admissibility, we must also vacate the district court's summary judgment order. And we note that more than the summary judgment record may change on remand. Pending Majestic's appeal, this court spoke to Texas's concurrent causation doctrine, which formed the legal basis for the district court's summary judgment ruling. *See Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 476–77 (5th Cir. 2022). In *Advanced Indicator*, we held that "when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril." *Id.* at 477 (quotation marks and citation omitted). The insured may carry its burden of proving its loss "by putting forth evidence demonstrating that the loss came solely from a covered cause or by putting forth evidence by which a jury may reasonably segregate covered and non-covered losses." *Id.*

Whether *Advanced Indicator* breathes life into Majestic's sole causation theory it advances on appeal is a question, like the admissibility of Becker's Second Report and affidavit, for the district court to consider anew, once the summary judgment record is properly settled.

## III.

Because the district court failed adequately to explain its pertinent evidentiary rulings, we vacate its orders striking Majestic's expert's Second Report and summary judgment affidavit. In turn, we vacate the court's summary judgment based on those rulings, and we remand for further proceedings consistent with this opinion.

VACATED and REMANDED.

9