# United States Court of Appeals for the Fifth Circuit

———————

No. 22-30647
Summary Calendar

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 26, 2023

Lyle W. Cayce
Clerk

Oscar Turner, Jr.,

*Plaintiff—Appellant*,

*versus*

Wal-Mart Louisiana, L.L.C.; Wal-Mart, Incorporated,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CV-3417

———————————————————

Before Smith, Southwick, and Douglas, *Circuit Judges*.

Per Curiam:[*]

A customer sued Wal-Mart for injuries he suffered after being allowed to use a wrench on an automobile he brought in for servicing. The district court struck portions of the plaintiff's affidavit and granted Wal-Mart summary judgment. We conclude that the district court erred when striking

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

certain portions of the affidavit. Nevertheless, summary judgment was proper. AFFIRMED.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2020, Oscar Turner visited a Wal-Mart in Shreveport, Louisiana, to get new tires. While he was in the waiting area, a Wal-Mart employee told him that the mechanics were having trouble removing the lug nuts from his tires. The employee offered to let Turner remove the lug nuts, and Turner entered the service bay area to help. Turner accepted a wrench from the employee, attempted to use it to remove the lug nuts, and fell backward and injured himself when the wrench slipped. Turner had worked on cars before and had removed lug nuts from tires many times.

Turned sued Wal-Mart in state court. Wal-Mart removed the case to federal court in the Western District of Louisiana, based on diversity jurisdiction. Wal-Mart moved for summary judgment, arguing that any hazard had been open and obvious. Turner attached an affidavit to his opposition to the motion. Wal-Mart moved to strike the affidavit.

The district court granted the motion to strike after finding that portions of the affidavit contradicted Turner's prior testimony. The court also granted Wal-Mart's summary judgment motion. It relied on a Louisiana Supreme Court opinion that also denied liability on quite similar facts. *See Caserta v. Wal-Mart Stores, Inc.*, 90 So. 3d 1042 (La. 2012). Turner timely appealed.

## DISCUSSION

Turner makes two arguments. First, he argues the district court erred by striking certain portions of his affidavit. Second, he argues that summary judgment was improper. We address the arguments in that order.

I.      *Affidavit*

We review a motion to strike for an abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007). A party may not "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quotation marks and citation omitted). "However, not every discrepancy in an affidavit justifies disregarding it when evaluating summary judgment evidence. Instead, the bar for applying the [sham affidavit] doctrine is a high one, typically requiring affidavit testimony that is inherently inconsistent with prior testimony." *Id.* (quotation marks and citations omitted).

The district court identified three discrepancies between Turner's deposition testimony and his later affidavit.

First, Turner testified that a Wal-Mart employee "asked [him] to take [the lug nut] off" and then Turner "tr[ied] [to] take it off." In his affidavit, Turner asserts "he did not request or agree with defendant, Wal-Mart, to attempt to remove the lug nuts." Despite saying he had not agreed, the affidavit also swears that a Wal-Mart employee "persuaded him to attempt to remove the lug nuts." Turner's initial testimony implies that he agreed to take the lug nuts off, while part of the affidavit explicitly states he did not agree. Because these statements are inconsistent, the district court did not abuse its discretion in striking the relevant portion of the affidavit.

Second, when asked whether the wrench was "defective," Turner testified "I don't know." In his affidavit, Turner avers that the wrench was "defective." Turner provides no explanation for the inconsistency, such as acquiring additional information that allowed him to form an opinion. Moreover, whether the wrench was defective is central to Turner's negligence claim. A panel of this court reasonably declined to find an abuse

of discretion where an excluded inconsistency relates to a key element of the plaintiff's claim. *Free v. Wal-Mart La., L.L.C.*, 815 F. App'x 765, 766–67 (5th Cir. 2020). We decline to do so here, too.

Finally, Turner testified that he had taken lug nuts off tires "[p]robably a thousand times." In his affidavit, Turner avers that he had been "figuratively speaking" and that he "ha[d] taken lug nuts off many times, but nowhere near a thousand times." A "summary judgment affidavit may supplement deposition testimony by clarifying or amplifying the facts with greater detail but may not simply 'tell[] the same story differently.'" *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 920–21 (5th Cir. 2009) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 496 (5th Cir. 1996) (alteration in original)). "[T]he sham-affidavit doctrine is not applicable when discrepancies between an affidavit and other testimony can be reconciled such that the statements are not inherently inconsistent." *Seigler*, 30 F.4th at 477. Turner's affidavit clarifies his earlier hyperbolic testimony and is reconcilable. As a result, the district court abused its discretion when excluding this third statement.

As we will explain, the error was harmless.

II.    *Summary judgment*

We review a district court's grant of summary judgement *de novo*. *Nationwide Mut. Ins. Co. v. Baptist*, 762 F.3d 447, 449 (5th Cir. 2014). Summary judgment is proper when "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). A party cannot defeat summary judgment with "conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). Instead, "the nonmovant must go beyond the pleadings and designate specific facts" that prove a genuine issue of material fact exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

No. 22-30647

Under Louisiana's duty-risk formulation for negligence liability, a plaintiff must prove: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006).

We now examine the Louisiana Supreme Court opinion on which the district court relied. It held this: "If the facts of a particular case show that the complained-of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff." *Caserta*, 90 So. 3d at 1043. The plaintiff in *Caserta* also suffered injury while attempting to remove a lug nut in a Wal-Mart service area. *Id.* The plaintiff was "a machinist who regularly uses a lug wrench, and typically services his own truck." *Id.* Further, the plaintiff "admitted he was using his body weight to put pressure on the lug" and that the "wrench was not defective." *Id.* The court concluded that "any risk from attempting to remove the frozen lug nut should have been obvious to plaintiff, and could have been avoided through the use of ordinary care. Therefore, defendants owe no duty to plaintiff." *Id.* (citation omitted).

*Caserta*'s import, however, changed on March 17, 2023, when the Louisiana Supreme Court decided *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467 (La. 2023). The court "clarif[ied] [] that whether a condition is open and obvious is embraced within the breach of the duty element of the duty/risk analysis." *Id.* at 478. Thus, whether a condition is open and obvious is "*not a consideration for determining the legal question of the existence of a duty.*"

*Id.* (emphasis added). Obviously, open and obvious defects are still part of the analysis, but its consideration occurs at a different point.

Because *Farrell* was published after briefing in this case was complete, we requested supplemental briefing from the parties. With that briefing in hand, we review the district court's grant of summary judgment.

We begin with duty. "The existence of a duty is a question of law. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* at 473 (citation omitted). Here, Louisiana Civil Code articles 2315 and 2316 supply a duty. *See id.* Article 2315(A) provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 states: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." Here, Wal-Mart had a duty to keep its premises in a "reasonably safe condition" for patrons. *See Farrell,* 359 So. 3d at 473–74.

With respect to breach, Louisiana courts apply the risk/utility balancing test, which considers four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Id.* at 474. The second factor includes analysis of "open and obvious" conditions. *Id.* at 478. We analyze each factor.

"If [the complained-of condition] was meant to be there, it often will have social utility." *Id.* at 474. Wal-Mart contends that "the utility of allowing customers the choice of removing their own over-tightened lug nuts is high." Allowing customers the option to remove their own lug nuts when

employees cannot do so saves customers the trouble of having to go elsewhere. Certainly, customer involvement in such activities may pose safety risks. We find this factor to be neutral.

Turning to the second factor, "[t]he likelihood of the harm factor asks the degree to which the condition will likely cause harm." *Id.* at 474. If a condition "is likely to cause harm, that weighs in favor of finding it unreasonably dangerous. If it is unlikely to cause harm, that weighs in favor of it not being unreasonably dangerous." *Id.* "The more obvious the risk, the less likely it is to cause injury because it will be avoided." *Id.* To that end, the "open and obvious concept asks whether the complained of condition would be apparent to any reasonable person who might encounter it." *Id.* at 478. Finally, the "magnitude of the harm factor asks whether the condition presents a risk of great or small injury and the likelihood of each." *Id.* at 474.

Turner argues that Wal-Mart, by purportedly restricting the service bay to employees, had already determined the likelihood and magnitude of harm to be high. Turner asserts that when customers enter the service bay, they are at risk of being "struck and killed by falling objects" or "vehicle[s]."

The correct focus is on Turner's use of the wrench. Here, as in *Caserta*,[1] voluntarily opting to remove lug nuts and then applying one's weight to do so, as Turner did, presents an "obvious" risk. *See Caserta*, 90 So. 3d at 1043. Individuals can likely "avoid[] any harm through the exercise of ordinary care," which weighs against finding there was an "unreasonable risk of harm." *Rodriguez v. Dolgencorp, LLC*, 152 So. 3d 871, 872 (La. 2014). Further, we conclude that voluntarily removing a lug nut with a wrench does

---

[1] *Farrell* clarified that the "open and obvious" inquiry relates to breach, not duty. *Farrell,* 359 So. 3d at 478. We still, however, read the substance of *Caserta*'s "open and obvious" analysis — not its placement — as valid guidance.

not present a high magnitude of harm. Consequently, the likelihood and magnitude of harm here is "minimal." *See Farrell*, 359 So. 3d at 479.

Next, we evaluate the cost of prevention. Turner argues it would not cost Wal-Mart any money to prevent harm by not allowing customers into the service bay. Wal-Mart argues that the record does not contain evidence on the cost of prevention. We agree that "the record is void of any [] evidence" regarding the cost of prevention. *Id*. at 479. As a result, we do not consider this factor.

Finally, we consider the social utility of Turner's activities. Turner argues that there was no social utility to his conduct. In any event, there may be some social utility to customers removing their own lug nuts when employees cannot do so. Further, removing lug nuts does not seem particularly dangerous by nature. As a result, this factor weighs in favor of breach, though it does not necessarily "weigh heavily as a consideration in determining an unreasonably dangerous condition." *Id.*

After applying the risk/utility balancing test, we conclude that "reasonable minds could only agree that the condition"— the risk of injury from applying one's weight to remove lug nuts from a tire — was not unreasonably dangerous. *See id*. at 478. Thus, Wal-Mart met its initial burden of identifying the absence of factual support for the breach element of Turner's claims. Turner has failed to produce factual support sufficient to establish a genuine issue of material fact. *See id*. at 479. Consequently, Wal-Mart did not breach any duty owed.

The district court's erroneous exclusion of a portion of Turner's affidavit does not affect this conclusion. The district court properly granted summary judgment. AFFIRMED.